UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ARCHIE REYNOLDS,                    Case No. 10-11044

        Plaintiff,                            Sean F. Cox
vs.                                         United States District Judge

COMMISSIONER OF                            Michael Hluchaniuk
SOCIAL SECURITY,                           United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 12)</u>**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 15, 2010,  plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits, closed period requested.  (Dkt. 2).  This matter is

currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 12).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on February 18, 2005, alleging that he

became unable to work on September 12, 2004.  (Dkt. 6, Tr. at 69).  The claim was

initially disapproved by the Commissioner on July 11, 2005.  (Dkt. 6, Tr. at 61-67).

Plaintiff requested a hearing and on April 9, 2008, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Peter N. Dowd, who considered the case

*de novo*.  In a decision dated July 28, 2009, the ALJ found that plaintiff was not

disabled.  (Dkt. 6, Tr. at 9-23).  Plaintiff requested a review of this decision on

September 21, 2009.  (Dkt. 6, Tr. at 7-8).  The ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits[1] (AC-1

and AC-2 , Dkt. 6, Tr. at 6), the Appeals Council, on January 8, 2010, denied

plaintiff's request for review.  (Dkt. 6, Tr. at 3-6); *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

---

[1] In this circuit, where the Appeals Council considers additional evidence but
denies a request to review the ALJ's decision, since it has been held that the record
is closed at the administrative law judge level, those "AC" exhibits submitted to
the Appeals Council are not part of the record for purposes of judicial review.  *See
Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*,
96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the
administrative record is limited to the ALJ's decision, which is the final decision of
the Commissioner, the court can consider only that evidence presented to the ALJ.
In other words, Appeals Council evidence may not be considered for the purpose
of substantial evidence review.

Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

###    A.    ALJ Findings

Plaintiff was 50 years of age at the time of the most recent administrative

hearing.  (Dkt. 6, Tr. at 69).  Plaintiff's relevant work history included

approximately 16 years as a self-employed mover.  (Dkt. 6, Tr. at 120).  In denying

plaintiff's claims, defendant Commissioner considered nerve damage as a possible

bases of disability.  (Dkt. 6, Tr. 95).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity from

September 12, 2004 through February 16, 2006.  Beginning on February 17, 2006,

the plaintiff had been engaged in substantial gainful activity.  (Dkt. 6, Tr. at15).  At

step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar and

cervical spines with osteoarthritis of the right ileum, and bipolar disorder with

alcohol abuse were "severe" within the meaning of the second sequential step.

(Dkt. 6, Tr. at 16).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 6, Tr. at 17).  At step four, the ALJ found that plaintiff could not perform his

previous work as a self-employed mover.  (Dkt. 6, Tr. at 21).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy.  (Dkt. 6, Tr. at 22 ).

    B.    <u>Plaintiff's Claims of Error</u>

    Plaintiff first argues that, because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence.  Plaintiff asserts that the ALJ did not properly evaluate plaintiff's impairments in the hypothetical question and, therefore, the hypothetical is flawed.  In the RFC, the ALJ gives plaintiff the mental limitation for "simple, routine and repetitive work activities performed in a stable work environment."  (Tr. 19).  However, the ALJ determined that plaintiff's "problems with maintaining concentration, persistence and pace appear to be moderate, then, despite his reports of few difficulties with focus."  (Tr. 18).  This is consistent with the Psychiatric Review Technique form finding that plaintiff suffered "moderate. ..difficulties in maintaining concentration, persistence, or pace."  (Tr. 166).  Plaintiff confirmed that "[his] mental impairments would have precluded [him] from working during that time because of problems concentrating."  (Tr. 284).  While SSR 96-8 indicates that an assessment of the "B" criteria is not in and of itself the same as an RFC assessment, plaintiff asserts that there is nothing in this language to suggest that an ALJ's factual determination at step three, which is summarized on the PRTF, can simply be disregarded at step five.  Rather, according to plaintiff, at step five, the ALJ is required to flesh out his

broad step three finding by defining a more detailed RFC, and incorporating those details into the hypothetical question.

In the present case, the ALJ determined that plaintiff had a severe impairment of, among others, a bipolar disorder with alcohol abuse and it was determined that his "problems with maintaining concentration, persistence and pace appear to be moderate." (Tr. 18). According to plaintiff, "often" is equivalent to "moderate" and courts have specifically found individuals that "often" suffer deficiencies of concentration are disabled. *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992). In *Bankston v. Commissioner of Social Security*, 127 F.Supp.2d 820, 826 (E.D. Mich. 2000), the Court indicated that "[a] reasonable interpretation of 20 C.F.R. § 404.1520a indicates that a mental deficiency occurring "often" may not be consistent with substantial gainful employment." According to plaintiff, therefore, the limitation that plaintiff is "limited to simple, routine and repetitive work activities performed in a stable work environment" does not sufficiently account for the entire "moderate" limitation in the ability to maintain concentration, persistence and pace. Specifically, plaintiff asserts that the ALJ does not adequately address the "moderate" limitation in the ability to maintain persistence and pace, which is the ability to complete a job on time. According to plaintiff, the limitation to "simple, routine and repetitive work activities performed in a stable work environment" is

just like other cases that resulted in remand for further proceedings because of the hypothetical not properly accommodating for the moderate deficiency in the ability to maintain concentration, persistence and pace.  For example, plaintiff points to *Benton v. Commissioner of Social Security*, 511 F.Supp.2d 842 (E.D. Mich. 2007), where the Court concluded that a limitation in a hypothetical to "simple, routine, repetitive tasks" was not adequate to reflect a "moderate" deficiency in concentration, persistence, or pace.  The court held that such a limitation did not address both of the components of concentration, persistence, or pace.  One of those components was the level of sophistication of the task while the other component was the frequency of performing the task.  *Id*. at 846.  Similarly, a "simple jobs" limitation in a hypothetical was not detailed enough to encompass a "moderate deficiency in concentration, persistence or pace" in *Alhin v. Commissioner of Social Security*, 2008 WL 2743954 (E.D. Mich. 2008).

Plaintiff also argues that the ALJ's ruling failed to identify limitations imposed by plaintiff's treating doctor in the hypothetical question.  On December 30, 2004, plaintiff was seen by Dr. Kommareddi and was instructed to "keep feet elevated." (Tr. 137).  This limitation was not addressed in the hypothetical question.

C.   Commissioner's Motion for Summary Judgment

According to the Commissioner, plaintiff cites various cases in which courts

have remanded certain RFC findings for other individuals, who were also rated as

having "moderate" limitations (or under the older formulation of the regulatory

technique, "often" experiencing deficiencies in concentration, persistence, or pace),

because the limitations in those cases were inadequate to describe the individual's

limitations.  However, the Commissioner argues that plaintiff's argument gives

inordinate and inappropriate weight to one small aspect of the Commissioner's

special technique used to evaluate the severity of mental impairments.  The

"special technique," described in 20 C.F.R. § 404.1520a, is an adjudicative tool to

assist ALJs with the evaluation of the severity of a claimant's mental impairment.

*See* Program Operations Manual System ("POMS") DI 24515.056, 2001 WL

1933392 (The Psychiatric Review Technique Form (PRTF) "is an adjudicative tool

that provides a technique for organizing findings of a mental disorder(s).").  As

Social Security Ruling 96-8p, explains, the PRTF is not an RFC assessment but is

"used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential

evaluation process."  Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4.

　　　In this case, according to the Commissioner, the ALJ translated the broad

findings on the PRTF into his more specific and detailed RFC finding.  (Tr. 21).

The ALJ specifically cited the opinion from Dr. Thomas, the state agency

reviewing psychiatrist, who had performed a similar translation, and assessed

specific work-related limitations due to plaintiff's mental impairments (Tr. 21,

citing, Tr. 170-72).  Translating the "moderate" difficulty in maintaining concentration, persistence, or pace into functional limitations, the ALJ found that plaintiff could nonetheless perform work involving simple, routine, and repetitive work in a stable work environment.  (Tr. 17, 21).  The Commissioner also points out that no medical source opined anywhere in the record evidence that plaintiff had more significant limitations in this functional area, and plaintiff offers no such evidence.  Significantly, there is no obligation to transfer the special technique findings verbatim into the hypothetical question; rather, when phrasing the question to a vocational expert, it is appropriate for the ALJ to incorporate his more specific RFC finding than the more general special technique findings.  *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, substantial evidence supports the ALJ's findings.  *See, e.g., Berkowski v. Comm'r of Soc. Sec.*, 652 F. Supp.2d 846, 859-60 (E.D. Mich. 2009) (finding substantial evidence supported ALJ's finding that claimant with moderate concentration deficiencies could perform simple, unskilled work of 1-,2-, and 3-step instructions); *Layne v. Comm'r of Soc. Sec.*, 2009 WL 2496474 at *3-4 (E.D. Mich. 2009) (upholding ALJ finding that claimant with moderate deficiencies of concentration could perform work involving simple, 1-, 2-, and 3-step operations).

According to the Commissioner, a rating of "moderate" must encompass the large number of claimants who have "severe," but not listing-level, mental

Report and Recommendation
Cross-Motions for Summary Judgment
*Reynolds v. Comm'r*; Case No. 10-11044

impairments.  Yet, plainly, not all of these claimants will have an identical level of limitations or identical residual functional capacity.  Rather,"[m]edically determinable mental disorders present a variable continuum of symptoms and effects."  Soc. Sec. Ruling 85-16, 1985 WL 56855, at *1.  For example, one individual – such as plaintiff in this case (see Tr. 17, 21, 170-71) – might have "moderate" difficulty with concentration, persistence or pace, but only when performing complex or detailed work, leaving him capable of simple and rote tasks.  Another individual's "moderate" concentration difficulties, on the other hand, might manifest even while doing simple tasks, requiring a limitation to only one- or two-step work.  Or, an individual could have deficits of pace alone, perhaps indicating he could do complex work but at a slow pace.  *See e.g.*, Listing 12.00C(3); *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005).  Given the range of possible RFC findings, the Commissioner urges the Court to reject plaintiff's assertion that a limitation to simple, routine, repetitive tasks can never adequately describe a claimant's concentration deficits.  According to the Commissioner, such a proposition undermines the individualized assessment of RFC that is necessary to an evaluation of disability.

Because determining what is an appropriate hypothetical question is necessarily fact-intensive, the Commissioner asks the Court to look at what the specific evidence in this case showed about plaintiff's ability to concentrate.  Here,

Report and Recommendation
Cross-Motions for Summary Judgment
*Reynolds v. Comm'r*; Case No. 10-11044

the evidence supported the ALJ's finding that plaintiff's concentration was adequate to perform work limited to simple, routine, and repetitive tasks in a stable environment. (Tr. 19). The ALJ noted that plaintiff's indicated abilities on a function report did not "preclude[] the mental requirements of the sort of simple work described" in the RFC finding. (Tr. 21). Plaintiff indicated that he went outside very day, could go out alone, drive a car, shop for food or clothes weekly, pay bills and handle money, and read every day, (Tr. 100, 103-04), activities that necessarily require the need to concentrate and focus. Further, the ALJ noted (Tr. 21) that plaintiff reported that he visited and talked to friends every day, followed written instructions and spoken instructions "good," and got along with authority figures "good or excellent." (Tr. 105-06). Plaintiff also reported that he could handle stress and changes in routine "good." (Tr. 106). In the area of the function report asking plaintiff to indicate areas affected by his impairments, plaintiff did not report any problems with memory, concentration, understanding, or following instructions. (Tr. 105).

The Commissioner argues that other substantial evidence in the record also supports the ALJ's decision. The psychiatrist at Genesee County Community Mental Health noted that plaintiff was "cooperative, made fair eye contact, and "relate[d] fairly well." (Tr. 221). The doctor specifically noted that plaintiff's recent and remote memory were intact. (Tr. 222). Notably, the doctor did not

make any mention of deficits in concentration or memory. (Tr. 221-26). Additionally, the ALJ noted his RFC assessment was similar to the one offered by Dr. Thomas, the state agency reviewing psychologist (Tr. 21, citing, Tr. 172). Thus, according to the Commissioner, the ALJ considered all of the pertinent medical evidence of record, gave plaintiff the benefit of the doubt, reasonably determined that plaintiff had moderate difficulties in maintaining concentration, persistence or pace, and translated those findings into a more detailed RFC finding.

As to plaintiff's second assertion of error, the Commissioner argues that a simple review of Dr. Kommareddi's treatments notes shows that he never offered any opinions about plaintiff's work related limitations. (Tr. 137, 140). The instruction that Dr. Kommareddi gave was part of a one-time treatment recommendation in December 2004. (Tr. 137). After observing plaintiff's swollen ankles, Dr. Kommareddi prescribed Lasix and recommended that plaintiff elevate his legs, maintain a low salt diet, and restrict his fluid intake. (Tr. 137). At plaintiff's next appointment three months later, Dr. Kommareddi discontinued Lasix and made no notations about swelling. (Tr. 137). He never made reference to any such limitations or treatments again, despite seeing plaintiff seven more times. (Tr. 137, 141). On June 21, 2005, Dr. Sayyid, the consultative examiner, found "no ankle or pedal edema" or signs of DVT. (Tr. 153). Plaintiff never alleged any leg impairment in his application (Tr. 94-95) and testified that the

swelling was a "one time" issue.  (Tr. 268-69).  Plaintiff has presented no support for his assertion that Dr. Kommareddi's intended his one-time treatment recommendation to reflect an ongoing work related limitation.  Even if that would have been Dr. Kommareddi's intention, the Commissioner asserts that an opinion assessing a limitation to leg elevation based on a one-time swelling issue that resolved within three months would be an opinion "so patently deficient that the Commissioner could not possibly credit it," and in no way would merit remand. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  Furthermore, according to the Commissioner, plaintiff's swelling issue does not meet the duration requirement in the Act and applicable regulations given that, to be disabling, a condition must last 12 months.  Plaintiff has presented no evidence that his one-time leg swelling lasted 12 months.  On the contrary, the record, including plaintiff's testimony, demonstrates that it did not.  Thus, the Commissioner urges the Court to reject this argument and affirm the decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

accord, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

The primary issue before the Court – whether the ALJ properly accounted for plaintiff's moderate impairment of concentration, persistence, or pace in the hypothetical question using terms such as "simple," "routine," and "unskilled" – was ably analyzed in a recent decision authored by Magistrate Judge Laurie Michelson. *Taylor v. Comm'r*, 2011 WL 2682682 (E.D. Mich. 2011), adopted as the decision of the Court via order dated July 11, 2011. Judge Michelson began her analysis by noting that case law has resolved this issue in a variety of seemingly inconsistent ways. *Id*. at *6, n. 3 and n. 4 (collecting cases). Judge

Michelson acknowledged that "[i]n analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task." *Id*. at *7.  She also found, however, "that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Id*.

In undertaking this examination, Judge Michelson pointed to a case nearly identical to the one before her, and to the case presently before the undersigned: in a virtually identical case, another court in this District explained:

> Taken in isolation, the hypothetical limitations consisting of "[s]imple routine tasks in a low stress environment" and "minimal changes in the work place setting" might appear inadequate to account for "moderate" concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. 2008).  Similar to *Hess* and *Taylor*, the PRTF finds that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 166).  Also similar to *Hess*

and *Taylor*, the Mental Residual Functional Capacity Assessment (Tr. at 170), found plaintiff to be moderately limited in five of the 20 categories; specifically, the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting.  (Tr. at 170-171).  In *Hess* and *Taylor*, the courts both concluded that because the ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis.  *Taylor*, at *8.

Here, the PRTF also concluded that plaintiff could perform unskilled work, despite his moderate impairments of the ability to maintain attention and concentration, accept instruction and respond appropriately to criticism, and respond appropriately to changes in work settings.  (Tr. at 172).  Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on this ultimate opinion and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF, while ignoring others.  *Hess*, at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion would amount to a distortion of the record."); *see also Lewicki v. Comm'r of Soc.*

*Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place.  The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.").  Additionally, the ALJ did not simply limit plaintiff to "unskilled work."  Rather, the ALJ accounted for the plaintiff's specific limitations in the PRTF by limiting plaintiff to "simple, routine and repetitive work activities performed in a stable work environment."  *See Taylor*, at *9 (A reasonable interpretation of the opinions as a whole in the PRTF indicate that the concentration limitations identified do not preclude consistent or sustained concentration in a stable, simple, and repetitive task setting).[2]

The undersigned also concludes that the other evidence in the record does not suggest that plaintiff is any more limited than as found by the ALJ and posed in the hypothetical question on which the ALJ relied.  On September 11, 2004, the

---

[2]  Just as in *Taylor*, this case is distinguishable from *Ealy v. Comm'r*, 594 F.3d 504 (6th Cir. 2010) in which the Sixth Circuit found the ALJ's hypothetical to be deficient because it failed to include the limitation from the state DDS consultant that the plaintiff was only able to sustain attention to complete tasks in two hour segments over an eight hour day where speed was not critical.  Here, just as *Taylor*, (and unlike the circumstances in *Ealy*) the consulting physician substantially reduced the significance of the PRTF limitations by concluding that the plaintiff could perform unskilled work.

day before his alleged onset date, plaintiff saw Dr. Matthew Biafora, Ph.D., for an initial behavioral health assessment.  (Tr. 183-88).  Plaintiff described "anger, anxiety, depression, grief," and other symptoms related to learning his wife had an affair and fights with his teenage daughter over following rules and doing schoolwork.  (Tr. 183).  Dr. Biafora found plaintiff depressed, but noted that plaintiff's thought processes were intact, his memory was normal, and his judgment and insight were intact.  (Tr. 186).  He found plaintiff's general knowledge and intelligence were average.  (Tr. 186).  Dr. Biafora noted that plaintiff had no functional impairments, other than a "mild to moderate" emotional impairment, and specifically opined that plaintiff had no work-related functional impairments.  (Tr. 187).  He diagnosed depression and anxiety, and recommended counseling to "reduce depression, lessen anxiety, [and] work through issues of family conflict."  (Tr. 188).  Between September and November 2004, Dr. Biafora saw plaintiff for counseling six times.  (Tr. 176-81).  Plaintiff withdrew from treatment after the last appointment on November 12, 2004.  (Tr. 189).  Dr. Biafora noted that plaintiff would "call as need[ed]" and that plaintiff was "coping with family conflict and divorce" and had "less acute depression."  (Tr. 189).

The record reflects no further mental health treatment until September 2005, when plaintiff presented at Genesee County Community Mental Health for a clinical screening (Tr. 229-41) and psychosocial assessment (Tr. 211-19) by a

social worker.  Based on the social worker's referral (Tr. 219, 240), a psychiatrist

treated plaintiff on October 11, 2005.  (Tr. 221-26).  The doctor noted plaintiff's

reported medical history, and observed that plaintiff was cooperative, made fair

eye contact, and "relate[d] fairly well."  (Tr. 221).  Plaintiff was drinking 10-15

beers and 1-6 ounces of liquor daily.  (Tr. 222).  The doctor found that plaintiff had

a "somewhat grandiose mixed mood" and "some transient" suicidal ideation, but

was otherwise oriented, had an appropriate affect and that spontaneous and goal

directed mental activity.  (Tr. 222).  The doctor specifically noted that plaintiff had

limited insight, but that both his recent and remote memory were intact.  (Tr. 222).

The doctor diagnosed mixed bipolar disorder, and noted plaintiff's alcohol abuse.

(Tr. 224).  The doctor recommended therapy for plaintiff's "mood disorder" and an

evaluation for alcohol abuse.  (Tr. 224).  He prescribed Seroquel.  (Tr. 224). The

record does not reflect any further mental health treatment during the closed period

ending February 16, 2006.  Nothing in plaintiff's mental health treatment records

during the closed period suggests any additional or different limitations than those

imposed by the ALJ in this case.

     D.   <u>Conclusion</u>

     After review of the record, the undersigned concludes that the decision of

the ALJ, which ultimately became the final decision of the Commissioner, is

within that "zone of choice within which decisionmakers may go either way

without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Report and Recommendation
Cross-Motions for Summary Judgment
*Reynolds v. Comm'r*; Case No. 10-11044

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 19, 2011

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on August 19, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, Kenneth Shaitelman, AUSA, and the Commissioner of Social Security.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Reynolds v. Comm'r*; Case No. 10-11044